**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RANDY LEE THOMPSON, ) | No. EDCV 15-0809 AS |
| ) Plaintiff, ) | **MEMORANDUM OPINION** |
| v. ) | |
| CAROLYN W. COLVIN, ) Acting Commissioner of Social ) Security, ) | |
| ) Defendant. ) | |

**PROCEEDINGS**

On April 24, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On September 14, 2015, Defendant filed an Answer to the Complaint, (Docket Entry No. 16), and the Certified Administrative Record ("A.R."), (Docket Entry No. 17). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 13). On February 2, 2016, the parties filed a Joint Stipulation

("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 23).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed April 29, 2015 (Docket Entry No. 8).

## BACKGROUND AND SUMMARY OF EVIDENCE AND ALJ'S DECISION

On July 27, 2011, Plaintiff Randy Lee Thompson ("Plaintiff") applied for supplemental security income based on a disabling condition beginning July 27, 2011. (AR 148). On March 12, 2013 the Administrative Law Judge ("ALJ"), Jennifer A. Simmons, heard testimony from Plaintiff and vocational expert ("V.E.") David Rinehart. (A.R. 37-50). On August 6, 2013, the ALJ denied Plaintiff benefits in a written decision. (AR 23-32). The Appeals Council denied review of the ALJ's decision. (AR 1-4).

Plaintiff's sole claim pertains to the ALJ's evaluation of his mental state and mood disorder. (Joint Stip. at 4). The Court therefore summarizes the evidence pertaining to this claim and the ALJ's opinion.

On September 18, 2011, Plaintiff underwent a complete psychiatric evaluation by consultative examiner Dr. Sohini Parikh. (AR 227-233). Dr. Parikh noted that there were no medical records available for review during the assessment. (AR 228). Dr. Parikh's findings were generally unremarkable, although she noted that

Plaintiff's mood was "depressed and anxious" and that he was taking Zoloft. (AR 230-31). Plaintiff was also unable to interpret two proverbs, state the distance between New York and California or name the capital of California, and perform several mathematical operations. (AR 231). Dr. Parikh nevertheless found that Plaintiff's "ability to reason and make social, occupational, and personal adjustments" was unimpaired. (AR 232).

On November 15, 2011, state agency medical reviewer Dr. Heather Barrons completed a "Psychiatric Review Technique" checkbox questionnaire concerning Plaintiff's condition. (AR 251-61). Dr. Barrons checked boxes indicating that Plaintiff's impairments were not severe; that he suffered from mild difficulties in social functioning and maintaining concentration, persistence, or pace; and that he suffered from no restrictions in activities of daily living or repeated episodes of decompensation. (AR 251, 259). Dr. Barrons noted that Plaintiff had no formal psychological treatment history other than medication and that his activities of daily living were independently completed. (AR 261).

On May 3, 2012, Plaintiff underwent a psychiatric evaluation before consultative examiner Dr. Divyakant Kikani. (AR 300-03). Dr. Kikani noted that Plaintiff's symptoms included "depressed mood, social withdrawal, isolation, spending most of his time in his bedroom, feeling paranoid, feeling people are against him, out to get him and out to hurt him." (AR 300). Dr. Kikani also stated that Plaintiff was taking Zoloft and that Plaintiff had undergone an examination with Dr. Parikh. (AR 300). Dr. Kikani observed that

Plaintiff was "unkempt" and that his thoughts reflected feelings of "despair, helpless, hopelessness, preoccupation about prison experiences related flashbacks, preoccupation with wife's loss." (AR 301 (errors in original)). Dr. Kikani performed several tests and concluded that Plaintiff's memory, general fund of knowledge, abstracting ability, judgment, and insight into his current psychiatric problems were impaired. (AR 301). Dr. Kikani opined that Plaintiff was suffering from major depressive disorder with psychotic features and that his activities of daily living and social functioning were moderately impaired. (AR 302).

On May 30, 2012, state agency medical reviewer Dr. Kevin Gregg reviewed Dr. Barrons's opinion, the medical file, and Plaintiff's allegations of worsening paranoia and depression. (AR 306-307). Dr. Gregg affirmed Dr. Barrons's opinion, stating "[s]ee nothing severe here per function. Only on Zoloft." (AR 307).

On September 16, 2012, treating physician Dr. Paul Gailiunas completed a checkbox questionnaire regarding Plaintiff's mental state and ability to perform work-related functions. (AR 315-316). Dr. Gailiunas checked numerous boxes indicating that Plaintiff was "[s]eriously limited, but not precluded," "[u]nable to meet competitive standards" or had "[n]o useful ability to function" with respect to, e.g., his ability to maintain attention for two hours, maintain regular attendance, work without special supervision, and work with or near others without being unduly distracted. (AR 315). Although the form indicated that Dr. Gailiunas should explain limitations falling in any of these three severity categories and

4

include findings supporting this assessment, Dr. Gailiunas did not do so. (AR 316). Dr. Gailiunas opined that, given his limitations, Plaintiff would be absent from work more than four days per month. (AR 316).

At the March 12, 2013 hearing, Plaintiff testified that he was unable to work primarily because of back pain, but he was taking "a depression med because [his] kids mother passed away" and he was "dealing with that." (AR 41-42). Plaintiff stated that his depression started when she passed away and it "depressed [him] more and more every day." (AR 44). Plaintiff did not seek any therapy or counseling, although his doctor suggested it; Plaintiff stated that he was "going through so many things, [his] kids and just bills and trying to stay health [sic], live life is hard, you know." (AR 45). The V.E. then testified that there were jobs available for someone "at the light exertional level with frequent climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling," although not if that person were "off task" 20 percent of the workday or missed three days of work every month. (AR 48-49).

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 23-25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 25). At step two, the ALJ found that Plaintiff had severe impairments including aged compression fracture of the lumbar spine and obesity. (AR 25). The ALJ determined, inter alia, that Plaintiff's "mood disorder" was non-severe and did not significantly limit his ability to perform activities of daily living or basic work

activities. (AR 26-27). In making this determination, the ALJ assigned significant weight to the opinions of consultative examiner Dr. Parikh, and to state agency medical reviewers Dr. Barrons and Dr. Gregg and little weight to the opinion of consultative examiner Dr. Kikani. (AR 26). The ALJ found that the opinion of Plaintiff's treating doctor, Dr. Gailiunas, had "no probative value." (AR 26-27).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 27). Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work . . . except only frequent climbing of ramps, stairs, ladders, ropes, scaffolds; and only frequent balancing, stooping, kneeling, crouching, and crawling." (AR 27-30). In formulating this RFC, the ALJ noted Plaintiff's allegations of depression. ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" [AR 27]; "The claimant testified he could not work due to back pain and depression" [AR 28]; "The claimant testified that his depression started after his kid's mother passed away in March of 2011; however, he had not sought out counseling since that date." [Id.]).

At steps four and five, the ALJ determined that Plaintiff had no past relevant work but could work as a ticket taker, small products assembler, or cashier. (AR 30-31). Accordingly, the ALJ determined

that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31-32).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See <u>Brewes v. Commissioner of Social Sec. Admin.</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in determining that his mood disorder was not a severe impairment. (Joint Stip. at 4, 6).

**DISCUSSION**

After consideration of the record, the Court finds that the ALJ did not err in finding Plaintiff's mood disorder to be a non-severe impairment. However, because the ALJ found other impairments to be severe, any error in determining Plaintiff's mood disorder non-severe at step two of the five-step process was harmless.[1]

**A. Any Error In The ALJ's Step Two Finding Was Harmless**

Plaintiff characterizes the sole issue as "[w]hether the ALJ's finding of a non-severe impairment is supported by substantial evidence and free o[f] legal error." (Joint Stip. at 4).

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. See Bowen v. Yuckert, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). When the ALJ has resolved step two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at step two. See Burch v.

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (assuming that ALJ erroneously failed to find an impairment "severe," this error "could only have prejudiced [the claimant] in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor"); see also Rilling v. Astrue, 2011 WL 1630771 at *5 (C.D. Cal. 2011). Here, because the ALJ found that Plaintiff had some severe impairments, any error in failing to rule that additional impairments were "severe" is harmless at step two.[2] Nevertheless, as set forth below, the ALJ's decision was supported by substantial evidence.

In addressing Plaintiff's mood disorder, the ALJ stated first that there was "no evidence" of significant cognitive or functional limitations as a result of the disorder, noting that Plaintiff was able to "take care of his own personal care; prepare his own meals; shop for food and hygiene products; talk with others on the telephone; and spend time with family watching television and listening to music." (AR 26).

The ALJ then summarized and evaluated medical opinion evidence. The ALJ gave significant weight to the opinions of Drs. Parikh, Barrons, and Gregg because they were "consistent in that they all assess that [Plaintiff]'s mental impairments are non-severe and thus

---

[2] As Defendant notes, Plaintiff's claim is better characterized as "a contention that the ALJ should have included greater functional limitation in the [RFC] assessment," which did not assess limitations regarding Plaintiff's mental condition. (Joint Stip. at 14). However, since Plaintiff did not raise this claim, the Court declines to address it.

have no corresponding work related limitations. These opinions are all generally supported by the record as a whole, which reveals that [Plaintiff] has not sought or received any formal psychiatric treatment other than low dosages of medication from his primary care provider." (AR 26 (citations omitted)).

The ALJ gave little weight to the opinion of Dr. Kikani because it was based on a "one-time meeting with [Plaintiff]." (AR 26). The ALJ stated that, although Dr. Kikani's assessments "may offer a valid snapshot of [Plaintiff]'s reported abilities on a particular day, they are not necessarily accurate reflections of [Plaintiff]'s overall mental health. The [ALJ]'s access to and review of [Plaintiff]'s entire medical record offers a more comprehensive assessment of [Plaintiff]'s mental health and thus that is why the [ALJ] gives this opinion less weight." (AR 26).

The ALJ determined that Dr. Gailiunas's opinion had no probative value because it was a "checklist-style form" that appeared to be "completed as an accommodation to [Plaintiff] and include[d] only conclusions regarding functional limitations without any rationale for those conclusions." (AR 27). The ALJ also found that the opinion was not supported by any objective evidence. (AR 27).

Thus, the ALJ concluded:

> In sum, the claimant's medically determinable mental impairment of a mood disorder, considered singly and in combination, does not significantly limit the claimant's

>     ability to perform basic work activities.  A review of the
>     claimant's longitudinal mental health treatment records does
>     not support greater limitations than has been determined
>     herein.  Therefore, the claimant's medically determinable
>     mental impairment is nonsevere.

(AR 27).

   Although the medical opinion of a treating physician is generally given more weight than the opinion of a non-treating physician, and an examining physician's opinion carries more weight than a non-examining physician's opinion, see Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001), and Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (as amended), it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d).  If a treating or examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons. Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830. Where, as in this case, an examining physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating doctor's opinion. See id. at 830–31; see also Carmickle v. Comm'r of the Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

The ALJ rejected Dr. Gailiunas' opinion based on the finding that the "checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions." AR 27.  The ALJ's reasons were specific and legitimate and supported by the record.  The ALJ properly noted that Dr. Gailiunas' opinion was not supported by the objective medical evidence and was conclusory. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted opinion provided in unsupported checklist form); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ properly discounted treating physician's opinion where there was "no indication in the record what the basis for these restrictions might be"); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989) (ALJ's decision to reject treating physician's opinion due to a lack of medical evidence was sufficiently "specific and legitimate" and based on substantial evidence in the record).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 1, 2016

                                            _____/s/_____
                                                      ALKA SAGAR
                                      UNITED STATES MAGISTRATE JUDGE